Brian J. Pezzillo, Esq.
Nevada Bar No. 7136
PEZZILLO LLOYD
6725 Via Austi Parkway, Suite 290
Las Vegas, Nevada 89119
Tel: 702-233-4225
*Attorneys for Plaintiff MADDIN, INC.*

# THE UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA – SOUTHERN DIVISION

| | |
|---|---|
| MADDIN, INC, a Nevada Corporation, | CASE NO.: 2:13-CV-00827 |
| Plaintiff, | **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| ALLIED INSURANCE COMPANY OF AMERICA, a foreign corporation; DOES I through X, inclusive, and ROE CORPORATIONS XI through XX, | |
| Defendants. | |

Plaintiff MADDIN, INC. ("Maddin") respectfully submits the following **Motion for Partial Summary Judgment.**

-1-

# I.

# INTRODUCTION

Plaintiff seeks a determination with regard to Allied Insurance Company of America's ("Allied") inadequate investigation of and engaging in unfair practices in the handling of Maddin's claim as set forth herein. This matter arises from Plaintiff's opening of a restaurant located at 1050 South Rampart Blvd., Las Vegas, NV. The restaurant, originally known as the Hotel California and subsequently as Baja California Restaurant and Cantina was plagued by a sewer odor of unknown origins. The severity of the odor fluctuated on a day to day basis, but at times was so severe that the restaurant could not be opened for business. Upon commencing operations, Maddin procured a Business Interruption Policy as part of its insurance coverage from Allied to insure against the loss of business income in the event that the restaurant operations were interrupted. Upon unsuccessfully attempting to remedy the odor plaguing the restaurant, Maddin submitted a claim to Allied because of the loss of income being caused by the recurrent odor. Allied performed limited investigation into determining the underlying cause of the odor and ultimately ceased all investigatory activities without ever determining the nature or cause of the odor. Although Allied acknowledged that the use of an engineer might be appropriate, no such professional was ever employed. Allied's failure to properly investigate the submitted claim and subsequent denial of the claim constitutes a violation of Nevada law and an "unfair practice" pursuant to Nevada statute. If a proper investigation had been performed the cause of the odor would have been discovered and could have been rectified allowing restaurant operations to continue. Whether such investigation would ultimately have resulted in coverage is irrelevant, as the adequate investigation itself would have revealed the cause of the odor and allowed Maddin to remedy the problem even absent such coverage. Ultimately, Allied did not determine the cause of the odor and therefore denied the claim of Maddin based upon misrepresentations. Placing the burden on Maddin to perform a reasonable investigation, Allied informed Maddin that once Maddin determined the cause of the odor Maddin could reassert the claim.

After Allied refused to conduct further investigation or take any steps to remedy the situation Maddin was unable to determine the cause of the odor and business operations suffered to such an extent that restaurant operations were forced to cease in their entirety on or about March 20, 2012 after

less than one year of operation.  Subsequently, Maddin commenced an action against the landlord of the building, G.L. Dragon, in the Eight Judicial District Court, Clark County, Case No. A-12-658634-B on the general basis that the landlord had breached various duties owed to Maddin with regard to the existence of the odor.  The matter remains pending and is set to commence trial on a five week stack starting June 30, 2014.  Had Allied performed a reasonable investigation the remedy to the odor could have been employed and the restaurant continued operations and the state court litigation avoided.

Although Allied never completed an adequate investigation it has asserted various reasons for denying coverage to Maddin, including, that it did not know what the cause of the odor was and therefore would not issue coverage, the property was subject of a construction defect which was excluded under the policy and that coverage would be denied because the odor constitutes a "pollutant" for which no coverage exists.  As set forth herein, even if the Court ultimately determines that coverage was not available to Maddin under the facts and circumstances of this matter, liability is still present as Allied failed to perform an adequate and reasonable investigation and engaged in unfair practices in handling the claim.  Had Allied simply performed a reasonable investigation the cause of the odor would have been discovery and even absent insurance coverage, Maddin would have been afforded the opportunity to take necessary action to ensure the continuation of restaurant operations.

## II.

## STATEMENT OF UNDISPUTED FACTS

1. Maddin. entered into a lease agreement ("Lease Agreement") for purposes of running a restaurant at 1050 South Rampart Blvd., Las Vegas, NV on or about December 30, 2011, a true and correct copy of which is attached hereto as Exhibit "1"; *see* also Deposition of Maddin, Inc.'s NRCP 30(b)(6) witness/Jimmy Maddin deposition (collectively "Maddin Depo."), p. 30, a true and correct copy of which is attached hereto as Exhibit "2".

2. The restaurant was originally known as Hotel California Restaurant & Cantina. *See* Exhibit "2", Maddin depo., p. 23.

3. The name of the restaurant was subsequently changed to Baja California Restaurant & Cantina. *Id.*

4.    Prior to commencing operations, Maddin spent nearly $500,000 in tenant improvements in order to improve the real property. *Id.* p. 33.

5.    Tenant improvements began in approximately January, 2011 and continued until April, 2011. *Id.* at 39.

6.    Through insurance agent Jeff Maren, Maddin, as part of his overall insurance coverage, procured a business interruption insurance policy, a true and correct copy is attached hereto as Exhibit "3" and which was identified by Maddin in his deposition. *See* Maddin depo., p. 41.

7.    Prior to entering into the Lease Agreement, Maddin noticed an odor akin to an outhouse in the restaurant. *Id.* at 43.

8.    The odor was intermittent and would be noticed at different times. *Id.* at 45, 49.

9.    Maddin approached the landlord regarding the presence of the odor at which time the landlord, G.L. Dragon explained the odor was due to the fact that the building had sat vacant for a period of 1 ½ years and that the toilets and drains needed to be flushed with water and bleach. *Id.* at 44 – 45.

10.   During the time of the tenant improvement Maddin's general contractor, Mastej Construction, poured hot water and bleach in the drains in an attempt to alleviate the odor. *Id.* at 89.

11.   During the construction phase of the tenant improvements the odor was not as noticeable due to the fact that the building was "open aired" and thus the building was not sealed. *Id.* at 46.

12.   The odor became more pervasive once the final doors were installed at the restaurant in late April/early May, 2011. *Id.*

13.   At that time Maddin called a plumbing contractor, Larkin Plumbing, to check and snake the drains in an attempt to remedy the odor. *Id.* at 52.

14.   At the recommendation of Larkin Plumbing Maddin installed air ventilation filters; however, the filters had no effect on the odor. *Id.* 53 – 54.

15.   After Larkin Plumbing could not remedy the ongoing odor Maddin contacted an additional plumbing contractor – Anytime Plumbing. *Id.* at 58.

-4-

16. In addition to Larkin and Anytime, Maddin also paid out of pocket two additional companies to try and remedy the odor problem – Honey Wagon and Moonlight Plumbing. *Id.* at 137.

17. Having been unable to remedy the odor Maddin contacted Allied and opened a claim which the records reflect was acknowledged by Allied on February 3, 2012. *See* Exhibit "4", p. ALLIED 000031.

18. Allied was aware that prior to submitting its claim Maddin had undertaken certain actions in an attempt to remedy the ongoing odor issue including the changing of filters, gaskets, seals and that four (4) different plumbing companies had made attempts at correcting the issue but none had been able to find a solution. *Id.*

19. On that same date Allied noted in its internal records that it needed to determine the cause of the loss. *Id.* at 000029.

20. Allied also noted that the insurance company's agent "Jeff" had spoken with Maddin and explained that Allied needed to determine the cause of the damage prior to discussing coverage. *Id.*

21. Allied arranged for a company called Service Master to contact Maddin and conduct an inspection. *Id.*

22. On February 6, 2012 Service Master performed the planned inspection and noted that a "horrific ordor [sic]" existed at the restaurant, but that the cause of the odor could not be determined. *Id.* at 000029.

23. On the same day, Allied informed Maddin that the cause had not been discovered and informed Maddin that Allied may hire an independent adjustor ("I/A") or engineer. *Id.*

24. The following day Allied again noted that "the odor needs to be determined as to why the smell is still lingering in area. . . . Once this odor has been identified as the cause, then we can address policy coverages as to if [sic] we have a covered cause of loss." *Id.* at ALLIED 000026.

25. On February 7, 2012, Allied again informed Maddin that " . . . according to policy language, we can only provide coverage once that we have determined covered cause of loss, then we can apply coverage. *Id.* at 000025.

-5-

26. On February 8, 2014, it is noted that an independent adjustor (I/A) was to visit the property. *Id.* at 000024.

27. The independent adjuster had identified a specific engineering company, Remkis [sic] Engineering as a possible professional to be used in the investigation of Maddin's claim. *Id.* at ALLIED 000023 - 000024

28. On February 9, 2012, it was determined by the I/A that there was no need for an engineer to be contacted. *Id.* at 000023.

29. Defendant's insurance coverage expert Frank T. Zeigon, has opined in this matter as follows with regard to the duties of an insurance company in investigating claims submitted by an insured:

> Thorough investigation of the claim, including, but not limited to, continual documentation of the results of investigatory actions taken, and the retention of proper experts as required by the specific facts of each claim.

*See* Copy of Defendant's Expert Report, p. 3(c), a copy of which is attached hereto as Exhibit "5".

30. On February 15, 2012 Allied was advised that the independent adjustor was still detecting an odor in the building and that employees of Maddin were walking out. *See* Exhibit "4", at ALLIED 000021.

31. On or about March 20, 2012, as the odor had not been resolved, Maddin was forced to cease operations. *See* Exhibit "2", p. 13.

32. On or about March 21, 2012, Maddin, Inc. initiated a lawsuit in Nevada State District Court, Case No. A-12-A658634-B against the landlord regarding the odor in the restaurant, a true and correct copy of which is attached hereto as Exhibit "6".

33. As part of that lawsuit Maddin hired an civil engineering expert, John O'Donnell, who issued reports regarding the cause of the odor and which have been produced and adopted in this matter as well, copies of which are attached as Exhibit "7", "8" and "11" respectively.

-6-

34. On June 25, 2012, Allied, approximately 3 ½ months after opening the claim, issued a denial letter stating that the loss was caused by a "pollutant" and that this was an excluded cause of loss. *See* Exhibit "4" at ALLIED 000032 – 000034.

35. Mr. O'Donnell identified the sewer system as the origin and cause of the odor. *See* Deposition of John O'Donnell, a copy of which is attached hereto as Exhibit "9", pp. 20 - 22.

36. In demonstrating that the cause of loss was not a pollutant Maddin provided a copy of Mr. O'Donnell's report to Allied.

37. On March 13, 2013, a subsequent letter was issued by Allied which stated, in part:

> On behalf of AMCO Insurance Company ("AMCO"), we previously declined to accept coverage for this claim on the basis that the cause of the loss – an offensive odor that drove restaurant customers away – had not been determined. If the odor was caused by a "pollutant," coverage would be excluded.

*See* Exhibit "4" at ALLIED 000035.

38. Subsequently in the same letter Allied "reconsidered" its position in light of new information contained in Mr. O'Donnell's report which had been provided and issued a new denial on the basis that "The sewer line was not properly constructed to facilitate the normal flow of waste water from the premises to the main sewer line." *Id.* at ALLIED 000035.

39. This same letter stated as follows:

> By letter dated February 11, 2013, you informed us that the business premises are the subject of a construction defect suit, and experts in the litigation have determined that the offensive odor is due to construction defects in the sewer line.

*Id.*

40. On April 2, 2013 Maddin attempted to coordinate a conference call with Allied to discuss the issues of the its claim. *Id.* at 000007.

41. As noted in the records of Allied, Allied declined to set a telephone conference to discuss the matter. *Id.* at 6.

-7-

42.     Maddin's engineering expert has testified that he was able to readily determine the cause of the odor.  *See* Deposition of John O'Donnell, a copy of which is attached hereto in pertinent part as Exhibit "12", p. 20.

43.     Likewise, Mr. O'Donnell testified that he was able to determine action which could be taken to rectify the odor and which would have allowed for Maddin, Inc. to continue its business operations.  *Id.* at 22.

## III.

## POINTS AND AUTHORITES IN SUPPORT OF RESPONSE

### A.     STANDARD APPLICABLE TO MOTION FOR SUMMARY JUDGMENT

The standard applied to motions for summary judgment is well established by the provisions of Fed. R. Civ. P. 56 and caselaw, to wit:

> The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
>
> In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.,* 213 F.3d 474, 480 (9th Cir.2000)(citations omitted).
>
> In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.,* 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159–60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To demonstrate the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 631 (9th Cir.1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.,* 477 U.S. at 324.

**B.     Nevada Law Applies to The Pending Action and Must Be Liberally Construed in Favor of Plaintiff**

"Because this case is filed under diversity jurisdiction, Nevada law governs the Court's interpretation of the insurance policy". *Century Surety Company v. Casino West, Inc.*, 2010 WL 762188, 762191 (D. Nev. 2010)(apply Nevada law to interpretation of insurance policy), *citing Gary Day Constr. Co., Ins. v. Clarendon Am. Ins. Co.*, 459 F.Supp.2d 1039, 1044 (D. Nev. 2006)(citing *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817(1938).   The Nevada Supreme Court has repeatedly held that insurance policies are to be broadly interpreted  and to afford the insured the greatest possible coverage thus "clauses excluding coverage are interpreted narrowly against the insurer." *Federal Ins. Co. v. American Hardwar Mut. Ins. Co.*, 124 Nev. 319, 322, 184 P.3d 390, 392 (2008) *citing National Union Fire ins. V. Reno's Exec. Air*, 100 Nev. 811, 815, 839 P.2d 599, 602 (1984).  "When an insurance policy clause is ambiguous, the ambiguity must be resolved against the insurer and in favor of the insured." *Id.* When an insurer seeks to restrict a policy's coverage it must clearly and distinctly communicate to the insured the nature of the limitation.  *Id.*  "When a provision in an insurance policy is ambiguous, the provision 'should be construed to effectuate the reasonable expectations of the insured.'" *Benchmark Ins. Co. v. Sparks*, 254 P.3d 617, 622, 127 Nev. Adv. Op. 33, 48 (Nev. 2011)

*citing National Union Fire Ins. V. Caesars Palace*, 106 Nev. 330, 332-33, 792 P.2d 1129, 1130 (1990). Because an insurance policy is a contract of adhesion it is interpreted broadly to afford the "greatest possible coverage to the insured." *United National Ins. Co. v. Frontier Ins. Co., Inc.*, 120 Nev. 678, 684, 99 P.3d 1153, 1156 (2004) *citing Farmers Inc. Group v. Stonik*, 110 Nev. 590, 594, 5 P.3d 1054, 1057 (2000). The Court should read the policy as a whole and from the perspective of one untrained in the law or the insurance business. *Fourth St. Place v Travelers Indem. Co.*, 270 P. 3d 1235, 1239, 127 Nev. Adv. Op. 86 (Nev. 2011). "If a term in an insurance policy is ambiguous, it will be construed against the insurer, because the insurer was the drafter of the policy."

Additionally, in investigating the claim submitted by Maddin, Allied was under a duty to exercise good faith and to undertake a reasonable investigation of the submitted claim. *See* NRS 686A.310. Likewise, Allied was required to be forthright and avoid any misrepresentations regarding coverage, or potential coverage, to Maddin. *Id.* Such duties are owed regardless of whether or not coverage for the asserted claim exists under the policy. Indeed causes of action may be based solely on the issue of whether the insurer performed its statutorily required duties including the performance of an adequate investigation of the claim. *See Turk v. TIG Ins. Co.*, 616 F. Supp. 2d 1044, 1052-53 (D. Nev. 2009).

**C.     Allied Engaged in Unfair Practices in the Handling of Maddin's Claim as it Failed to Adequately Investigate the Claim, Misrepresented Coverage under the Policy, Failed to Affirm or Deny Coverage within a Reasonable Time and Failed to Provide a Reasonable Explanation for the Denial Causing Substantial Ongoing Damage to Maddin**

The undisputed facts of this mater establish that Allied violated NRS 686A.310 in the handling of Maddin's claim and should be held liable for engaging in unfair practices as it was required to investigate and determine the cause of the odor giving rise to the claim and failed to do so. Allied recognized this responsibility repeatedly in its records, an admission that establishes its knowledge of what needed to happen to determine coverage for the claim. Allied then simply failed to do what was

necessary and instead denied the claim, after a protracted period of time, without a reasonable basis, misrepresenting coverage under the policy by citing exclusions when it did not know whether those exclusions even applied and failing to provide a reasonable explanation for the denial.

As has been recognized by this Court, the provisions of NRS 686A.310 "address the manner in which an insurer handles an insured's claim whether or not the claim is denied." *Schumacher v. State Farm Fire & Cas. Co.,* 467 F.Supp.2d 1090, 1095 (D.Nev.2006) *citing Pioneer Chlor. Alkali Co., Inc. v. Nat'l Union Fire Ins. Co.,* 863 F. Supp. 1237, 1243 (D.Nev. 1994). *Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F. Supp. 2d 1223, 1236 (D. Nev. 2010). The determination of whether Allied violated NRS 686A.310 is not dependent upon whether the policy had coverage for the claim in question, but rather focuses on the issue of how the claim was handled.

> An insured can bring a claim for violation of NRS 686A.310 in the absence of actual coverage. The plain language of the statute guides the Court's decision. Under § 310(1)(d) an insurer violates this statute when it fails to "affirm or deny coverage within a reasonable time," Thus, an insured has a cause of action against an insurer if the insurer waits an inordinate amount of time before informing the insured that there is no coverage. In addition to this plain language, the fact that the statute provides a private right of action and was enacted as "part of a comprehensive plan to regulate insurance practice in Nevada" supports the conclusion that liability under the statute is not limited by whether or not insurance coverage exists. *Pioneer Chlor Alkali Co.,* 863 F.Supp. at 1241. Finally, it should be noted that in *Pioneer Chlor Alkali v. National Union Fire Insurance* this Court held that "the provisions of NRS § 686A.310 address the manner in which an insurer handles an insured's claim whether or not the claim is denied." *Id.* at 1243.

*Turk v. TIG Ins. Co.*, 616 F. Supp. 2d at 1052-53. Thus, under Nevada law, the inquiry to be made in determining whether Maddin is entitled to judgment, is whether Allied acted as it was statutorily required to act by NRS 686A.310 as an insurer in reviewing Maddin's claim. The answer to this inquiry can be had with a review of the undisputed facts, and the answer is no - Allied did not act as it was required, and it engaged in unfair practices and caused damage to Maddin for which Allied is responsible, as a matter of law.

Allied engaged in unfair practices in the handing of Maddin's claim by violating three subsections of NRS 686A.310(1): subsection (a), subsection (d) and subsection (n).  NRS 686A.310(1)(a) states that "misrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue" is engaging in unfair practice.  "This subsection prohibits such malfeasance as an insurer misrepresenting the terms of an insurance policy to its insured, or misrepresenting to its insured facts that are within the insurer's knowledge that could give rise to coverage. *See, e.g., Albert H. Wohlers & Co. v. Bartgis,* 114 Nev. 1249, 969 P.2d 949, 961 (1998) (insurer misrepresented to the insured that a policy was similar to the insured's previous policy and unilaterally inserted provisions into the policy without disclosing their effect to the insured); *Stalberg v. W. Title Ins. Co.,* 230 Cal.App.3d 1223, 282 Cal.Rptr. 43, 50 (1991) (under similar provision of California law, finding substantial evidence of violation where insurer created and recorded "wild" deeds containing fictitious easements, and concealed this fact from its insured)". *Zurich Am. Ins. Co. v. Coeur Rochester, Inc.,* 720 F. Supp. 2d 1223, 1236 (D. Nev. 2010).

NRS 686A.310(1)(d) provides that an insurance company that fails "to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured is engaging in an unfair practice. *See also Turk at* 616 F. Supp. 2d 1052 (holding that an insured has a cause of action against an insurer if the insurer waits an inordinate amount of time before informing the insured that there is no coverage).  NAC 686A.675 is instructive on what is a reasonable amount of time for an insurer to take to investigate a claim.  It states that the "first-party claimant must be advised of the acceptance or denial of the claim" within 30 working days after receipt.  NAC 686A.675(1).   If additional time is needed to complete the investigation of the claim the insurer is to notify the claimant within 30 working days that it needs more time and advise as to the reasons why it needs more time.  NAC 686.675(3)

Finally, NRS 686A.310(1)(n) states that an insurance company engages in unfair practice if it fails to promptly provide "an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of the claim or for an offer to settle or compromise the claim."

Allied's violation of NRS 686A.310(1) is established by its own activity log, internal notes, and reports. Maddin's claim was acknowledged by Allied on February 3, 2012. *See* Exhibit "4", p. ALLIED 000031. The claim concerned an odor and the loss of business Maddin's restaurant was experiencing due to the odor, the cause of which Maddin was unable to determine. Maddin was seeking to claim under the business interruption portion of this insurance policy. The claim is accepted by Allied and an investigation is opened. *Id.* Allied's adjuster almost immediately recognizes that a full investigation of the claim was needed, and that Allied needs "to determine what the cause of this loss is". *See* Exhibit "4", p. ALLIED 000029. This duty and requirement to determine the cause of the odor is referenced repeatedly in the internal Activity Log of Allied. *See* Exhibit "4", p. ALLIED 000028. Allied first hires Service Master, who reports to Allied that there is a "horrific ordor (sic)" but that it was unable to determine "where the smell is coming from." *Id.* Allied's adjuster notes that she told Mr. Maddin that Allied "is unaware of what the cause of loss is and that is why we are unable to provide coverage at this time", but indicates that she will continue the investigation. *Id.* Allied's adjuster recognizes that Allied may need to hire an independent adjuster or engineer to determine the cause, which is again reflected in the Activity Log. *Id.* at ALLIED 000027. Allied's adjuster advises Mr. Maddin that she is "using all resources available" to determine the cause of the loss. *Id.* at ALLIED 000024.

The independent adjuster hired by Allied, Richard Fisher, then inspects the restaurant and indicates he will meet with a general contractor and a plumber and an engineer, if needed. *Id.* at

-13-

ALLIED 000023. Mr. Fisher then informs Allied that no engineer is needed even though the cause of the odor had not been determined. *Id.* The basis for not hiring an engineer is not known, but it is not reasonable, because the cause of the odor had not been determined, and Allied recognized that without that determination it could not affirm or deny coverage under the policy. *See* Exhibit "4" at ALLIED 000026.[1] Mr. Fisher's final report notes the limited actions taken to try to determine the cause of the odor and contains no conclusions as to the source of the odor. *See* Exhibit "4", p. 000177- 000179. It is important to note that at the time Allied engaged Mr. Fisher's services, Mr. Fisher was not licensed as an independent adjuster in the State of Nevada, further establishing that Allied did not conduct an adequate or reasonable investigation of the claim prior to denying the claim by letter dated June 25, 2012. *See* Division of Insurance Public Record listing for Richard Fisher, a true and correct copy of which is attached hereto as Exhibit "10"

Allied's violation of NRS 686A.310(1)(a) occurs in its first letter denying the claim. Instead of completing the investigation and discovering the cause of the odor so that a coverage determination could be made, which Allied repeatedly recognized needed to happen, Allied waited months, did no further investigation, and then denies the claim, in a letter dated June 25, 2012. *See* Denial letter dated June 25, 2012, attached as Exhibit "4", p. ALLIED 000032 -000034. The letter states that the "Business Income loss and extra expense incurred from this loss results from a "pollutant", where "pollutant" is an excluded cause of loss, and there is no evidence that the odor was caused by a Covered Cause of Loss. Nor is there any evidence that the odor resulted from a "specified cause of loss". *Id.* At the time of writing this letter, Allied did not know whether the odor was a "pollutant", as defined in the policy, because Allied did not know where the odor was emanating from and did not

---

[1] It is now known that had an engineer been hired by Allied, the source of the odor would have been discovered and the issue would have been able to be fixed, according to John O'Donnell.

-14-

know the cause of the odor. This statement misrepresents the pertinent facts of the claim and misrepresents the applicability of the insurance policy provisions in order to deny Maddin's claim.

Allied's misrepresentations to Maddin are further established by subsequent correspondence from Allied. In a second denial letter dated March 13, 2013, Allied states "we previously declined to accept coverage for this claim on the basis that the cause of the loss – an offensive odor that drove restaurant customers away had not been determined. If the odor was caused by a "pollutant," coverage would be excluded." Allied admits in this second letter that its denial of coverage was based upon a misrepresentation, both of its investigation and of the provisions of the insurance policy. It misrepresented the odor as a pollutant, which allowed it to denying the claim by asserting that the loss of income was caused by a pollutant. As Allied admits in its second denial letter, it did not know the cause of the odor at the time it first denied coverage. Its first denial was based solely upon a misrepresentation of the policy provisions as applied to the information it uncovered, or rather did not uncover, in its investigation.

Allied violated NRS 686A(1)(d) as it failed to affirm or deny coverage within a reasonable time after receiving Maddin's claim. Maddin's claim was submitted in late January, 2012. The first denial letter isn't issued until June 25, 2012, almost five months after the claim was received. NAC 686A.675 requires acceptance or denial of a claim within 30 days or requires notice to the claimant of the need for additional investigation Allied did not notify Maddin that it needed additional time to complete its investigation. Allied's activity logs establish that after February 15, 2012 no additional investigation is performed as to the source of the odor. Allied failed to issue acceptance or denial within a reasonable time and it was not because Allied was performing additional investigation, to the contrary, the denial was based upon the incomplete investigation. In the time that passed between the submission of the claim and the subsequent denial, Allied engaged in unfair practice by failing to issue

-15-

the acceptance or denial of the claim within a reasonable time as required by NRS 686A.310(1)(d) and Maddin was forced to cease operations.

Allied did not provide Maddin with a reasonable explanation of the denial of its claim based in the insurance policy and applied to the facts of Maddin's claim and this failure is unfair practice pursuant to NRS 686A.310(1)(n).  Allied's first denial letter simply contains the blanket statement that the odor is a pollutant, even though Allied did not know whether the odor was a pollutant or whether the odor was caused by a pollutant.  It does not explain how Allied came to classify the odor as a pollutant with citation the policy.  Instead it cites portion of the policy with no explanation, likely because Allied did not know whether the odor was a pollutant, as admitted in its second denial letter. Allied's denial of Maddin's claim did not explain the reason for the denial and does not apply the cited provision to the facts of Maddin's claim. Allied's own letters establish its unfair practice in the handling of Maddin's claims.

### D.     Allied's Actions Rise to the Level of Bad Faith In Failing to Adequately Investigate and Fully Communicate With Maddin Regarding the Claim Submitted

In Nevada, bad faith is "an actual or implied awareness of the absence of a reasonable basis for denying benefits of the insurance policy. *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 324 (Nev. 2009), *citing U.S. Fid. V. Peterson*, 91 Nev. 617, 540 P.2d 1070, 1071 (1975).  Allied did not have a reasonable basis for denying Maddin's claim.  Allied did not complete its investigation and did not know what the cause of the odor was, therefore Allied could not have known whether there was coverage for Maddin's claim at the time the first denial letter was sent, June 25, 2012.  As such, even though the letter cites certain provisions in the insurance policy to support the denial, Allied did not have a reasonable basis for that denial.  Allied recognized repeatedly and informed Mr. Maddin repeatedly that it had the responsibility to determine the cause of the odor and that until that happened coverage could not be determined.

As was discussed, *supra*, Allied did not have a reasonable basis for denying Maddin the benefits of the insurance policy.  Allied acknowledged that it had the responsibility to investigate

Maddin's claim and determine the source of the odor so that it could determine whether the claim was covered by the insurance policy. Instead, Allied determined to simply deny coverage almost five months later. Allied admits that it did not know the cause of the odor at the time of the first denial-letter. In fact, it still does not know the cause of the odor and neither does Maddin as Maddin was forced to close even before Allied issued the first denial letter. Allied was well aware of the extreme financial detriment being suffered by Maddin due to the odor in the restaurant. Allied's records reflect that the odor was described as "horrific". It is difficult to understand how the denial could be reasonable where Allied did not have any factual basis.

### III.
### CONCLUSION

As set forth above, Plaintiff Maddin opened a restaurant in Las Vegas, Nevada and as part of opening the business procured a business interruption policy to protect itself from situations in which its business operations might be interrupted by foreseeable, but unexpected events. When such an event occurred and Maddin submitted a claim to its Allied Insurance Co., Allied performed only a limited investigation, hired an unlicensed independent adjustor to perform the investigation and subsequently denied the claim of Maddin without ever determining the cause of the "horrific odor" which plagued Maddin's restaurant and which ultimately forced its closure. Although aware of the fact that an engineer would have been an appropriate professional to investigate the claim, Allied chose not to employ an engineer and instead chose to deny Maddin's claim based upon ever changing theories and without ever determining the actual cause of the harm. This constitutes a breach of the duties of an insurer in Nevada and has resulted in damages to Maddin which are still being computed as there is ongoing litigation in Nevada State District Court as a result of Allied's unfair trade practices

/ / /
/ / /
/ / /
/ / /

and bad faith.  Accordingly, Plaintiff is entitled to summary judgment on the issue that Allied failed to perform an adequate investigation of the claim submitted by Maddin in violation of Nevada law.

June 2, 2013                                              PEZZILLO LLOYD

/s/ Brian J. Pezzillo
Brian J. Pezzillo, Esq.
Nevada Bar No. 7136
6725 Via Austi Parkway, Suite 290
Las Vegas, NV 89119
Attorney for Maddin Inc.